# LIEBER HAMMER HUBER & PAUL, P.C.

### ATTORNEYS AT LAW

June 22, 2018

**VIA CERTIFIED MAIL**

Edinboro Univ. of Pa.
219 Meadville Street
Edinboro, PA 16444

Charlotte Wellman, Ph.D.
Department of Art
Edinboro Univ. of Pa.
116 Doucette Hall
219 Meadville Street
Edinboro, PA 16444

Michael Hannan, Ph.D.
Interim President
Edinboro Univ. of Pa.
219 Meadville Street
Edinboro, PA 16444

Mark Deka, Ph.D.
Department of Art
Edinboro Univ. of Pa.
120 Doucette Hall
219 Meadville Street
Edinboro, PA 16444

James Parlin, M.F.A.
Department of Art
Edinboro Univ. of Pa.
268 Dearborn Hall
219 Meadville Street
Edinboro, PA 16444

**Re:** *Eric Schruers v. Edinboro Univ. of Pa.*, 11599-18 (C.P. Erie)

To Whom it May Concern:

As you may be aware, this office represents Eric Schruers, the plaintiff in the above referenced action. Enclosed in the above-captioned matter please find a Writ of Summons and an Acceptance of Service form pursuant to PA. R. CIV. PROC. 402(b). I respectfully request that you or your attorney accept service of original process by executing the enclosed Acceptance of Service form and returning it in the self-addressed stamped envelope.

Thank you for your cooperation in this matter. If you have any questions or concerns, please do not hesitate to contact me.

Sincerely,

Jacob M. Simon

cc:    Eric Schruers, Ph.D.
       Thomas M. Huber, Esq.
       James B. Lieber, Esq.

Enc.

**IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA**

ERIC SCHRUERS, PH.D.,                )        Civ. No. 11599-18
                                     )
        Plaintiff,                   )
                                     )
            v.                       )
                                     )
EDINBORO UNIVERSITY OF               )
PENNSYLVANIA, CHARLOTTE              )
WELLMAN, MICHAEL HANNAN,             )
MARK DEKA, and JAMES                 )
PARLIN,                              )
                                     )
        Defendants.                  )

## <u>ACCEPTANCE OF SERVICE</u>

I accept service of the Complaint on behalf of Edinboro University of Pennsylvania and

certify that I am authorized to do so.

_____
(Date)

_____
Authorized Agent
Edinboro Univ. of Pa.

# IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA

ERIC SCHRUERS, PH.D.,

    Plaintiff,

        v.

EDINBORO UNIVERSITY OF
PENNSYLVANIA, CHARLOTTE
WELLMAN, MICHAEL HANNAN,
MARK DEKA, and JAMES
PARLIN,

    Defendants.

CIVIL DIVISION

Docket No. 11599-18

TYPE OF DOCKET:

**COMPLAINT IN CIVIL ACTION**

Filed on Behalf of:

Eric Schruers, Ph.D.
Plaintiff.

Counsel of Record for this Party:

James B. Lieber
Pa. I.D. No. 21748

Thomas M. Huber
Pa. I.D. No. 83053

Jacob M. Simon
Pa. I.D. No. 202610

LIEBER HAMMER HUBER & PAUL, P.C.

5528 Walnut Street
Pittsburgh, PA 15232-2312
(412) 687-2231 (telephone)
(412) 687-3140 (fax)

JURY TRIAL DEMANDED

pd $130.75

## IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA

ERIC SCHRUERS, PH.D.,                                CIVIL DIVISION

    Plaintiff,                                Docket No.

       v.

EDINBORO UNIVERSITY OF
PENNSYLVANIA, CHARLOTTE
WELLMAN, MICHAEL HANNAN,
MARK DEKA, and JAMES
PARLIN,

    Defendants.

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

    Lawyer Referral & Information Service
    P.O. Box 1792
    Erie, PA 16507
    814/459-4411
    Mon - Fri
    8:30 a.m. - Noon; 1:15 p.m. - 3:00 p.m.

IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA

ERIC SCHRUERS, PH.D.,            )
                                 )
    Plaintiff,                   )
                                 )
    v.                           )
                                 )
EDINBORO UNIVERSITY OF           )
PENNSYLVANIA, CHARLOTTE          )
WELLMAN, MICHAEL HANNAN,         )
MARK DEKA, and JAMES             )
PARLIN,                          )
                                 )
    Defendants.                  )

#11599-18

2018 JUN 19 AM 10:17
CLERK OF RECORDS
PROTHONOTARY
COMMON PLEAS COURT
ERIE, PA

## COMPLAINT IN CIVIL ACTION

Plaintiff Eric Schruers, Ph.D., by and through undersigned counsel, files this Complaint for remedies and damages under Title VII of the Civil Rights Act ("Title VII") and the Pennsylvania Human Relations Act ("PHRA"), and for remedies under the Age Discrimination in Employment Act ("ADEA").

## I. PARTIES

1.     Plaintiff Dr. Schruers is a resident of Edinboro, Erie County, Pennsylvania.

2.     Defendant Edinboro University of Pennsylvania ("Edinboro") is a Pennsylvania State System of Higher Education university located in Erie County, Pennsylvania and employs in excess of 500 employees.

3.     Defendant Charlotte Wellman, Ph.D. is an Associate Professor in Edinboro's Art Department.

4.     Dr. Wellman is being sued in her individual and official capacities.

5.     Defendant Dr. Michael Hannan is the Interim President of Edinboro.

6.      Dr. Hannan is being sued in his official capacity as the Interim President of Edinboro including as the official with authority to hire and/or reinstate Dr. Schruers.

7.      Defendant Mark Deka, Ph.D. is an Associate Professor in Edinboro's Art Department.

8.      Dr. Deka is being sued in his individual and official capacities.

9.      Defendant James Parlin, MFA is a Professor in Edinboro's Art Department.

10.     Mr. Parlin is being sued in his individual and official capacities.

## II.  JURISDICTION

11.     Jurisdiction of this Court over the matters in this Complaint is founded upon 28 U.S.C. § 1331 and on 28 U.S.C. § 1367(a).

## III.  VENUE

12.     The events related in this Complaint occurred in Erie County, Pennsylvania, in the Western District of Pennsylvania; therefore, venue is proper in this Court.

## IV.  ADMINISTRATIVE EXHAUSTION

13.     On September 25, 2013, Dr. Schruers dual filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") (533-2014-0004) and the Pennsylvania Human Relations Commission ("PHRC") asserting sex and age discrimination.

14.     On April 22, 2015, Dr. Schruers dual filed another charge of discrimination with the EEOC and the PHRC asserting retaliation and sex and age discrimination.

15.     On or about March 26, 2018, Dr. Schruers received right-to-sue letters from the EEOC.

2

16.     This Complaint is being filed within ninety (90) days of receipt of the right-to-sue letters.

17.     The Pennsylvania Human Relations Commission has not issued a notice of dismissal and more than one year has passed since Plaintiff dual-filed the charges of discrimination.

## V.  FACTS

18.     Dr. Schruers is male, was born in 1966, and currently is 52 years of age.

19.     Dr. Schruers is an art historian and college professor.

20.     Dr. Schruers holds a Bachelor of Arts in Art History from Edinboro University, a Master of Arts in Art History from The Pennsylvania State University ("Penn State"), and a Ph.D. in Art History from Penn State.

21.     In 1996, Dr. Schruers accepted a tenure track position at Mesa State College in Grand Junction, Colorado (now Colorado Mesa University), where he ultimately received tenure and was promoted to Associate Professor in 2002.

22.     During the seven years at Mesa State, Dr. Schruers taught a course load that predominantly was European Art History along with Non-Western Art History courses.

23.     In 2003, desiring to return east, Dr. Schruers left Mesa State and accepted a position at Slippery Rock University; however, two years later (2005), this position was eliminated due to budget cuts.

24.     At Slippery Rock, Dr. Schruers' course load was focused primarily on European Art, with a Non-Western survey and a single American Art course.

25.     In 2009, Dr. Schruers was hired as an instructor into Edinboro's Art Department and later promoted in 2010 to assistant professor.

3

26.     Dr. Schruers initially hired as a replacement for Dr. Charlotte Wellman to cover basic Overview classes and upper level courses in 20th century Art (which were primarily focused on European Art).

27.     In the spring of 2010, Professor Lynne Reno, who covered the 17th to 19th century courses, announced her retirement.

28.     Dr. Schruers was then selected to fill her position for 2010-2011.

29.     No search was conducted as he had extensive experience studying and teaching this material.

30.     Dr. Schruers was recommended for renewal for 2011-2012, and 2012-2013, having received positive peer and chair reviews.

31.     During this time, Dr. Schruers taught an extensive course load of classes on 17th through 19th century topics, as well as History of Modern Architecture and various Non-Western courses.

32.     In Fall 2012, Edinboro posted a tenure track position in Art History.

33.     The position required a Ph.D. in Art History with a secondary area in architecture considered "a plus."

34.     The teaching responsibilities included large sections of general education survey courses with a primary focus area of 17th to 19th century art as well as undergraduate art history seminar courses.

35.     Dr. Schruers applied for the position in December 2012.

36.     Dr. Schruers was well-qualified for this position based on his education and experience.

4

37.     Dr. Schruers had the required Ph.D. in Art History as well as a secondary area in architectural history, including during this period he taught a Modern Architecture course at Edinboro and architecture was an area of his doctoral comprehensive exams

38.     Dr. Schruers also had extensive experience teaching large general education survey courses in 17th to 19th century art and undergraduate art history seminar courses at Edinboro as well as his previous universities.

39.     Dr. Schruers was told that this tenure-track position was a conversion of his then-current full-time temporary position; thus, he was the incumbent as he had been performing the teaching duties of the position for four years as well as nine years of teaching a four course per semester full-time schedule for two years at Slippery Rock and seven years at Mesa State.

40.     Despite Dr. Schruers' excellent qualifications and good fit for the tenure-track position, on April 18, 2013 Associate Professor Dr. Mark Deka informed Dr. Schruers that he was not a finalist for the position.

41.     The Search Committee ultimately recommended a younger female and less qualified candidate named Nanette Thrush.

42.     Ms. Thrush was also one of the finalists for the later second search.

43.     The search had been irregular, was inflicted with sexist and ageist bias, and Dr. Schruers was not given a fair and equal opportunity to promote his candidacy for the position.

44.     By way of example, Dr. Wellman was an influential member of the Search Committee and has a reputation for displaying bias against males, as noted by her colleagues and students.

45.     Two separate faculty members told Dr. Schruers that Dr. Wellman is biased against

5

males.

46.     In the spring of 2010, when Lynne Reno announced her retirement and Dr. Schruers was selected to replace her, Professor Reno said to him words to the effect of "Be careful around Sherry, she does not like men," also noting that Dr. Wellman did see chair Jim Parlin as an ally and the she was friends with him and his wife.

47.     Prof. Reno warned him that because of this relationship he should be wary of complaining about Dr. Wellman to Mr. Parlin.

48.     This would later prove accurate when Mr. Parlin became agitated and annoyed when Dr. Schruers tried to discuss Dr. Wellman's untruthful peer evaluation of him in spring 2013.

49.     Also, in Fall 2010, Dr. Wellman sent Dr. Schruers a threatening "protocol" email that he would not be around for long if he continued to present himself to the Administration as capable of teaching a wide variety of subjects thereby making her and Dr. Deka look bad.

50.     After the search, Dr. Schruers was told by a then-member of the Art Department that Dr. Wellman "disliked men."

51.     Shortly before the posting, Dr. Wellman stopped by Dr. Schruers' cubicle and discouraged him from applying for the tenured position.

52.     She inappropriately placed her hand on Dr. Schruers' knee and said: (a) there had been a meeting with Department Chair James Parlin and the Administration in which concerns were raised about the number of faculty working in the Art Department with degrees from Edinboro; (b) the Department was instructed to avoid considering anyone with a degree from Edinboro as a candidate for the upcoming searches, including the tenure track Art Historian position, and; (c) Dr. Schruers should start applying for positions at other universities.

6

53.     Dr. Schruers immediately clarified this issue with Chair Parlin who told him that there was a concern only with hiring *recent* Edinboro graduates who had just received their terminal degrees, which obviously did not apply to Dr. Schruers who had graduated from Edinboro in 1988 with a BA in Art History (Chair Parlin indicated to Dr. Schruers that he had not known that Dr. Schruers graduated from Edinboro) more than twenty five years before, had received his masters and doctorate from Penn State (and not Edinboro), and had extensive teaching experience outside of Edinboro at other universities (Penn State, Colorado Mesa University, and Slippery Rock).

54.     Dr. Wellman also has said to Dr. Schruers that it looked good for the program to have a minority female on staff, referring to Dr. Schruers' colleague, Swati Bandi, who at the time was filling the History of Film and Video position.

55.     Prior to the posting for the tenure track position, Dr. Wellman had given Dr. Schruers a very positive peer evaluation in Spring 2012, with comments including "His Powerpoint presentation was simply beautiful," "Eric is easily the most technologically sophisticated member of our area," "he created a rich, extemporaneous narrative for Mucha's art," "Schruers area of specialization is late 19th century and early 20th century European art, particularly architecture," "He has shown remarkable versatility and a willingness to develop courses on a range of topics, from 18th century through early 20th century art as well as non-western surveys," and "He is an intensely warm engaging mentor to his students and a generous colleague."

56.     After Dr. Schruers applied for the tenure-track position, however, Dr. Wellman reversed her opinion of his teaching and issued him a negative peer observation.

57.     There was no material change in Dr. Schruers' teaching that would justify Dr. Wellman's complete reversal of her earlier positive opinion.

7

58.     Dr. Wellman unfairly faulted Dr. Schruers for not covering certain material when he in fact did cover that material after she prematurely had left the class.

59.     There is no requirement regarding the length of an observation, but certainly an evaluator who leaves class early and then faults a professor for not covering material that was covered later in the class is not operating in good faith.

60.     Dr. Wellman tried to keep the negative peer observation report from Dr. Schruers in violation of the CBA by emailing it solely to Dr. Mark Deka (the other tenured Art History faculty member) and failed to offer to go over the peer observation report with Dr. Schruers, also in violation of the CBA.

61.     After Dr. Schruers was not selected for the position, a tenured professor in the Art Department told Dr. Schruers that he was not surprised because "everyone knows that Sherry [Dr. Wellman] hates men."

62.     This professor also told Dr. Schruers about his students who were taking a class with Dr. Wellman and how the male students were consistently given bad grades while the female students earned top marks, prompting the female students to write the assignments for the male students who still were given bad grades.

63.     Many of Dr. Schruers' students complained of similar treatment and that Dr. Wellman would spend much of her lecture time denigrating men.

64.     A particular male student came to see Dr. Schruers numerous times as Dr. Wellman failed everything he turned in and refused to work with him to give him an idea of what would be acceptable to her.

65.    As a result this student eventually gave up on completing his Art History major.

66.    Dr. Penelope Orr, a member of the Search Committee, told Dr. Schruers that she was disgusted how the search was handled and that he was "the best candidate."

67.    These statements made to Dr. Schruers clearly reflect that Dr. Wellman harbors a sexist bias against males.

68.    Also, on April 1, 2013, Dr. Schruers himself overheard Dr. Wellman rave about a particular younger applicant stating, "Wasn't our candidate dynamic, I think he is in his late 20's."

69.    Among many irregularities, the Search Committee failed to score and thereby credit Dr. Schruers' "Skype" interview.

70.    Human Resources requires that all top candidates be scored and ranked as part of the hiring process.

71.    Edinboro has admitted that each of the top candidates was assigned a "Skype" interview score based on the candidate's responses and overall interview, except that for unexplained reasons the Committee did not assign a numerical score for Dr. Schruers.

72.    In contrast to Dr. Schruers, the following candidates received "Skype" scores: Matthew Jarvis (younger candidate in his 20's, described by Dr. Wellman as "dynamic"); Nanette Thrush (female/younger); Marie Gasper-Hulvat (female/younger); Maria D' Anniballe Williams (female/younger), and; Carissa Massey (female/younger).

73.    The failure to score Dr. Schruers on this critical selection criteria assured that he would not be the top-scoring candidate or even recommended as one of the final candidates for the position.

74.    An Art History major involved in the interview process commented to Dr. Schruers

9

that Dr. Wellman had been very favorable and complimentary to all of the female candidates but was very rude and condescending to the male candidate.

75.     This disparate treatment evidences gender and age discrimination on the part of Edinboro.

76.     The Search Committee also failed to contact Dr. Schruers' references while the search was active.

77.     Dr. Deka did not contact Dr. Schruers' references until after the Committee already had submitted its recommendation for Nanette Thrush, and did so only in response to Dr. Schruers' complaints about this so-called "oversight" to the Administration.

78.     Dr. Deka's subsequent attempts to contact Dr. Schruers' references clearly were done to protect himself from possible subsequent legal penalties or criticism and not as a part of a good faith selection process.

79.     On April 18, 2013, Dr. Deka informed Dr. Schruers that he was not the finalist for the position.

80.     On or about April 21, 2013, Dr. Schruers complained in writing to the Edinboro Administration about the numerous search irregularities (including Dr. Wellman's ageist and sexist statements; the failure to contact his references) and retaliation he had encountered.

81.     Weeks later, Dr. Deka attempted to contact Dr. Schruers' references, one of whom described Dr. Deka's call as "very strange," not a real effort to contact a reference, and a "dishonest" attempt by Dr. Deka to protect himself.

82.     Clearly, the Search Committee only contacted Dr. Schruers' references after the fact and in an attempt to cover up its earlier failures to do so.

83.     By comparison, the Search Committee did contact the references of the other top candidates, the majority of whom are female and all of whom were sufficiently younger than Dr. Schruers.

84.     Edinboro claimed that the Search Committee attended a demonstration class by Dr. Schruers and that Dr. Deka attended "but he left early because he was ill."

85.     This allegation is denied as stated because Dr. Deka, the Search Chair, never attended the demonstration.

86.     Dr. Deka never was in the auditorium and did not attend the lecture.

87.     He later told Dr. Schruers that he would observe another class, but never did.

88.     Also, contrary to Edinboro's claim, at no time did Dr. Deka ever tell Dr. Schruers that he could choose what he preferred to teach during the Search Committee's class observation.

89.     Dr. Wellman, the then-Search Committee Chair, told Dr. Schruers which class they were going to observe and when.

90.     Edinboro admitted that Chair Parlin interviewed the three female candidates but not Dr. Schruers because "Mr. Parlin was very familiar with Dr. Schruers and his experience and qualifications."

91.     To the contrary, Mr. Parlin was not familiar with Dr. Schruers' experience or qualifications.

92.     Mr. Parlin never once observed Dr. Schruers in the classroom over the 4 years he taught there, which was in violation of the CBA's requirement that the Department Chair conduct peer observations.

93.     Dr. Schruers raised this issue with the Administration at an April 26, 2013

11

meeting, and then-Interim Provost Dr. Michael Hannan confirmed that it was Mr. Parlin's job as Department Chair to personally observe Dr. Schruers' teaching.

94.     After this meeting, Dr. Schruers was told by Jean Jones that after he had left the room, Interim Provost Hannan said, "How is this guy not a finalist?"

95.     In addition, Mr. Parlin was not even aware that Dr. Schruers had graduated from Edinboro, thus demonstrating that he was not familiar with Dr. Schruers' education background.

96.     As a result of Dr. Schruers' complaints, the search was declared a "failed search" and no one was hired.

97.     Had the search not been infected with a sexist and/or ageist bias, Dr. Schruers would have been hired into the full-time tenure track Art History position.

98.     In June 2013, the position was re-advertised and Dr. Schruers again applied.

99.     The Search Committee was reconstituted without Dr. Wellman.

100.    As a result, Dr. Wellman had an angry exchange with Dr. Schruers during which she told him that she should be able to choose the person that she is going to work with for the rest of her career.

101.    Dr. Schruers was qualified for the position based on his education and experience.

102.    Nevertheless, he was not recommended for the position under circumstances giving rise to an inference of gender and age discrimination.

103.    For example, the Search Committee recommended only younger females for the position.

104.    In addition, the purported justification for the recommendation denial was a pretext.

105.    After the second Search Committee identified the finalists for on-campus interviews, one of the Search Committee members, Diane Crandall, called Dr. Schruers to inform him that he was not selected as a finalist.

106.    According to Professor Crandall, the members of the Committee were instructed by Parlin and/or Deka not to consider anyone (like Dr. Schruers) who had not written their dissertation on a European topic.

107.    This directive was suggested and implemented by Dr. Deka, who now was the Search Committee Chair and worked closely with Dr. Wellman, and Department Chair Parlin.

108.    The effect of this directive was to eliminate Dr. Schruers as a candidate because he had not written his dissertation on a European topic, as Edinboro certainly knew.

109.    However, under the circumstances, this was not a legitimate criteria to exclude Dr. Schruers.

110.    Dr. Schruers was told that the woman who was the first choice declined the position having accepted a job elsewhere.

111.    Ms. Thrush then was offered the position but only as a temporary position, not tenure track, so she declined.

112.    The third finalist was determined to not be qualified and the second search was then failed.

113.    Edinboro contacted Dr. Schruers on the night before the semester began and hired him to teach two classes for the Fall 2013 semester: (1) 17th Century Baroque Art and (2) 19th Century Art (AH 535 - Art in Revolution, an upper-level undergraduate course on French Modernism from the French Revolution (1789) to the Paris Commune Uprising (1870)).

13

114. The Department was antagonistic to Dr. Schruers.

115. Dr. Stephen Combs, Dean of the College of Arts, Humanities and Social Sciences, and not anyone from the Art Department, called Dr. Schruers the night before the semester started to ask if he could teach the courses.

116. The Dean changed the two courses scheduled times so Dr. Schruers could teach them at 8am Monday through Friday, while still being able to drive 62 miles to Slippery Rock to teach his full load there.

117. No one from the Art Department made any contact with Dr. Schruers about these assignments.

118. Mr. Parlin, Dr. Deka and Dr. Wellman intentionally avoided Dr. Schruers.

119. Dr. Schruers was not assigned an office in the Art Department, instead he was assigned an office in an abandoned dormitory on the far end of campus.

120. This was 50% of the classes that were to have been taught by the successful candidate in the tenure track position search with the other two being two sections of the basic class "Overview of Western Art."

121. Both of these courses focus on European art and Dr. Schruers previously had taught them a number of times at Edinboro.

122. The Art Department voted in favor of hiring Dr. Schruers to teach these classes, thereby confirming that he in fact was qualified to teach them.

123. In both of those classes Dr. Schruers received excellent peer observations and student evaluations, and was nominated by his students for two "Certificates of Teaching Excellence."

14

124.    Dr. Schruers also was qualified to teach European art classes based on his training and teaching experience.

125.    While receiving advanced degrees at Penn State, Dr. Schruers studied with some of the leading scholars in European Art including his advisor Dr. George Mauner, who specialized in 19th century European Modernism.

126.    Dr. Schruers also was an assistant to Dr. Hellmut Hager, a world-renowned scholar of 17th and 18th century Italian and German Baroque architecture.

127.    As set forth in Dr. Schruers' CV, the vast majority of his courses were in European art.

128.    Furthermore, Dr. Schruers began teaching his own courses for Penn State in 1992 and they all were focused on the European tradition, primarily Renaissance to Modern art surveys.

129.    Dr. Schruers' full-time positions at Colorado Mesa University, where he taught for seven years from 1996 to 2003, and at Slippery Rock University, where he taught for two years full-time from 2003 to 2005, all entailed teaching a schedule of predominantly European art history courses.

130.    Similarly, at Edinboro, Dr. Schruers taught a large number of courses in European art history, including "Overview of Western Art," "Art of the 19th Century," "Baroque Art of the 17th Century," "Art of the 18th Century," and "Art in Revolution (19th century French Modernism from the French Revolution to the Paris Commune Uprising)."

131.    Based on the fact that Dr. Schruers was hired by Edinboro to teach two European art history classes for the Fall 2013 semester, that he studied European art history as part of his advanced degrees, and that the majority of the classes he has taught since 1992 have been in

15

European art history, Dr. Schruers certainly was qualified to teach European art history as part of the tenure track position.

132.    Under the circumstances, Edinboro's decision to exclude him from consideration in the search purportedly because he did not do his dissertation in a European art history subject simply is not credible or understandable and, therefore, a pretext.

133.    While Dr. Deka denies that he instructed the committee not to consider individuals outside the European art field, the scoring instrument that was devised to rank the candidates clearly demonstrates that his statement is not truthful and a member of the second Search Committee said to Dr. Schruers, "We were instructed to not consider anyone who hadn't written their dissertation on a European topic."

134.    The scoring instrument was devised to credit a large number of points to candidates with European topics for their dissertation, and little to no points to candidates like Dr. Schruers who wrote on any other topic.

135.    The emphasis of the applicant scoring was based on this pretextual requirement of a European dissertation topic.

136.    Edinboro maintained that the job description was changed from "17th to 19th century art" to "17th to 19th century European art" to attract more applicants, but a narrower job description would not (and did not) elicit more applicants and is illogical.

137.    Furthermore, during the first search, the Search Committee never indicated any desire for a European specialty.

138.    For example, no questions targeting "European" issues were asked of Dr. Schruers during his "Skype" interview, and the classes the candidates were asked to teach were general survey

courses, not presentations of any research or upper-level topics.

139.    Edinboro's later focus on European art to unfairly disqualify Dr. Schruers from getting the position constitutes a pretext.

140.    On September 19, 2013, Dr. Schruers received notice from Edinboro that he was not selected for the position.

141.    Sid Booker, Associate Vice President of Human Resources and Faculty Relations, informed Dr. Schruers that, "After careful review by the Screening Committee, another candidate was selected whose overall qualifications were more in line with the specific requirements of this position."

142.    Based on information and belief, this was false because no other candidate was selected or hired, Dr. Schruers was the most qualified candidate, and the second search had failed and did not result in any hire.

143.    In the Fall 2014, Edinboro posted a vacancy for an introductory level Art History course (ARHI-220 Introduction to Film and Video Art).

144.    Dr. Schruers, who is qualified to teach that course, applied for the position and in good faith participated in the interview and screening process.

145.    On Monday, December 15, 2014, Suzanne Proulx, the Chair of the Search Committee, requested more information from Dr. Schruers and indicated she wanted to follow up with him on Wednesday, December 17, 2014.

146.    Dr. Schruers immediately provided Professor Proulx with the requested information.

147.    That same day, Dr. Schruers received an email from a former colleague, Swati

17

Bandi, who previously had taught the open course.

148.    Professor Bandi informed Dr. Schruers that Dr. Wellman had told her that another younger instructor named Hanjin Park already had been selected to fill the open position.

149.    Dr. Schruers immediately wrote to Professor Proulx as well as to the then Dean of the College, Dean Combs, and informed them of this irregularity in the search process and that it constituted retaliation against him for his earlier discrimination complaint.

150.    Hanjin Park was hired to teach the course outside the normal search procedure.

151.    Dr. Schruers' application for the position was denied and he was not hired for the position.

152.    Based on the circumstances and timing of events, Edinboro and the individual Defendants retaliated against Dr. Schruers because of his prior complaint of discrimination by interfering with and denying his application, and discriminated against him because of his sex and/or age.

153.    Contrary to Edinboro's claim, Dr. Schruers was qualified to teach the Art History Course "Introduction to Film and Video Art."

154.    According to Edinboro's job advertisement, the "Required Qualifications" were a "MA in Art History, Film Studies or related field."

155.    Dr. Schruers has both a Ph.D. and a MA in "Art History."

156.    Based on the degree requirement alone, Dr. Schruers undoubtedly was qualified to teach the course.

157.    By way of comparison, one of the two individuals who ultimately was assigned to the course, Dr. Tom Weber, does not have a Ph.D. in Art History or Film Studies.

18

158.     Instead, Dr. Weber's Ph.D. is in "Communication Studies/Ethnomusicology," which is not within the Art History/Film Studies discipline.

159.     Moreover, "Introduction to Film and Video Art" is a General Education Art History course offered by the Art History program in the Art Department.

160.     It is not a studio art course offered by Applied Media Arts (studio area of Cinema, Graphic Design and Photography) (course catalog description: "This course introduces film and video art as art media. Students will be provided with an historical overview from the beginning of film (c. 1885) and artists' video (c. 1963) to the present. The course will focus on the approaches to technical and aesthetic elements that have contributed to transforming craft into art.").

161.     This course is not about the production of film and video, it is about the history and criticism of film and video.

162.     Since Dr. Schruers' area of specialization is 19th and 20th century American and European art, he was particularly qualified for the course because that is the precise time frame of the Introduction to Film and Video Art class.

163.     Once Dr. Schruers submitted his application, the selection criteria was changed again in an attempt to exclude his candidacy.

164.     After Dr. Schruers applied, the selection criteria changed such that the Search\ Committee now was looking for so-called "in-depth expertise in Film and Media Studies."

165.     This altered criteria was contrary to the job posting seeking candidates with Art History or Film Studies backgrounds, and designed to discriminate and retaliate against Dr. Schruers with his experience teaching Art History.

166.     Further, this "in-depth" selection criteria is belied by the fact that the course was

an introductory level General Education course open to all students and it was not an upper-level course or studio production course designed specifically for Art History majors or Studio Art majors in Film or Animation.

167.    Dr. Schruers does not lack the so-called "in-depth" expertise in this area.

168.    For example, the three senior members of the Film and Animation program at Edinboro (Jeremy Galante, Steven Carpenter, and Michael Genz) previously had asked Dr. Schruers if he would develop and teach a History of Animation course for them.

169.    These three senior Film and Animation faculty (one of whom was on the Search Committee) previously had determined that Dr. Schruers in fact was "qualified" and had the necessary "expertise" to create a much more in-depth course on film than the basic Introduction to Film and Video Art.

170.    Edinboro's post-hoc claim that now Dr. Schruers no longer was qualified to teach the introductory course clearly is false and a pretext.

171.    While Introduction to Film and Video Art is a basic intro-level course, Dr. Schruers has taught higher-level courses at Edinboro that focused on films and film history.

172.    Dr. Schruers taught "ARHI 531 - Art & Society," that addressed, *inter alia*, "film" as a "purveyor[] of social change" and two-thirds of that course focused on documentary films.

173.    By way of comparison, the prior instructor of Introduction to Film and Video Art – Swati Bandi – also taught the ARHI 531 – Art & Society course.

174.    Dr. Schruers further covered film history while at Edinboro when he taught "ARHI 556 - Early 20th Century Art."

175.    Moreover, during his tenure at Edinboro, Dr. Schruers taught 12 different Art

History courses, (see Ex. 2), thereby demonstrating his versatility to teach any Art History course including Introduction to Film and Video Art.

176.   Edinboro's claim that Dr. Schruers was not qualified to teach the course is false.

177.   As set forth in the job posting, Edinboro was searching for an Instructor to teach "*two* Art History classes" for Spring 2015.

178.   However, after Dr. Schruers submitted his application in mid-November 2014, Dr. Wellman apparently facilitated the assignment of one of the two courses to Hanjin Park.

179.   This is based on Edinboro's own admissions in its EEOC position statement. *See* ¶ 9.d. ("Dr. Wellman referred Mr. Park's inquiry about the course to department chair Jim Parlin").

180.   Dr. Wellman and her colleague Mark Deka went so far as to solicit the necessary course materials from the prior instructor, Swati Bandi, purportedly "to make things easier for Mr. Park."

181.   This likely was due to the fact that Mr. Park, who has a studio background as opposed to an art history background like Dr. Schruers, never had taught a lecture-based art history course and would need the prior instructor's materials to teach the course.

182.   It is clear that Mr. Park never even applied for the position and he was not screened or recommended by the Search Committee.

183.   This course assignment was outside the confines of the ongoing Instructor search and, therefore, suspicious.

184.   Based on information and belief, because Mr. Park taught the course as an overload, he was paid 10 or 12.5% of his total salary in accordance with the CBA.

185.   It would have been less expensive for Edinboro to have allowed the successful

21

candidate, which should have been Dr. Schruers, to have taught both sections of Introduction to Film and Video Art instead of just one.

186.   Based on information and belief, the assignment of one of the two Art History courses outside the normal manner of proceeding in a hiring situation (and as listed in the Job Posting) was a deliberate attempt to not hire Dr. Schruers for discriminatory reasons and/or in retaliation for his prior discrimination complaints against the University.

187.   As a result of Defendants' discriminatory and retaliatory actions, Dr. Schruers was denied a full-time tenure track position and another teaching position within Edinboro's Art Department.

188.   As a result of these failures to hire, Dr. Schruers has suffered financial and emotional damages including, but not limited to, losses of salary, health benefits, generous pension and/or retirement benefits, emotional harm, and harm to his reputation.

189.   Dr. Schruers seeks all remedies and damages permitted by law including, but not limited to, back pay, reinstatement, hire or re-hire, damages for lost prospective future employment, front pay, compensatory damages for emotional pain and suffering and reputation damage, injunctive and declaratory relief, and payment of his litigation costs, including reasonable attorneys' fees, plus pre-judgment and post-judgment interest.

190.   Plaintiff requests a jury trial.

## COUNT I
### Plaintiff v. Edinboro University
### Title VII – Discrimination on the Basis of Gender

191.   The foregoing paragraphs are incorporated as if set forth herein at length.

192.   Dr. Schruers is male and in a class protected by Title VII.

22

pretextual nature of Edinboro's justification for the failure to hire, a causal connection exists between Dr. Schruers' protected conduct and the adverse employment actions.

205. As a result of the adverse employment actions, Dr. Schruers has suffered economic losses and been subject to emotional distress and reputation damage.

206. Dr. Schruers seeks all remedies and damages available under Title VII, including but not limited to, back pay, front pay, compensatory damages for emotional distress, reputation damage, and defamation of character, punitive damages, attorney's fees and costs, and prejudgment and post-judgment interest.

## COUNT III
### Plaintiff v. Interim President Hannan and Dr. Wellman
### ADEA – Age Discrimination

207. The foregoing paragraphs are incorporated as if set forth herein at length.

208. The individual Defendants to this claim are being sued in their official capacities for prospective injunctive relief.

209. Dr. Schruers is over 40 years of age (currently 52) and in a class protected by the ADEA.

210. Dr. Schruers is qualified for the positions he applied to at Edinboro.

211. Dr. Schruers suffered adverse employment actions when Edinboro failed to hire him for those positions.

212. Individuals outside of Dr. Schruers' protected class were treated more favorably.

213. Edinboro's justifications for the adverse employment actions are false and a pretext for discrimination.

214. As a result of the adverse employment actions, Dr. Schruers has suffered economic

losses and been subject to emotional distress and reputation damage.

215.     Dr. Schruers seeks all equitable remedies and injunctive relief permitted by law, including, but not limited to, restoration and/or rehiring into the tenure-track position within Edinboro's Art Department and/or similar full-time position, as well as costs of litigation including reasonable attorney's fees.

<div align="center">

**COUNT IV**
**Plaintiff v. Interim President Hannan and Dr. Wellman**
**ADEA – Retaliation**

</div>

216.     The foregoing paragraphs are incorporated as if set forth herein at length.

217.     Dr. Schruers engaged in conduct protected by the ADEA.

218.     For example, Dr. Schruers dual filed charge of discrimination with the EEOC and the PHRC asserting sex and age discrimination and retaliation on September 25, 2013 and April 22, 2015, and litigated those charges up until he received the right-to-sue letters in April 2018.

219.     Following the protected conduct, Dr. Schruers was retaliated against by Edinboro.

220.     As described above, Dr. Schruers was denied a position.

221.     Based on the timing of the protected conduct, the individuals involved, and the pretextual nature of Edinboro's justification for the failure to hire, a causal connection exists between Dr. Schruers' protected conduct and the adverse employment actions.

222.     As a result of the adverse employment actions, Dr. Schruers has suffered economic losses and been subject to emotional distress and reputation damage.

223.     Dr. Schruers seeks all equitable remedies and injunctive relief permitted by law, including, but not limited to, restoration and/or rehiring into the tenure-track position within Edinboro's Art Department and/or similar full-time position, as well as costs of litigation including

reasonable attorney's fees.

## COUNT V
### Plaintiff v. All Defendants
### PHRA – Discrimination on the Basis of Gender

224.    The foregoing paragraphs are incorporated as if set forth herein at length.

225.    Dr. Schruers is male and in a class protected by the PHRA.

226.    Dr. Schruers is qualified for the positions he applied to at Edinboro.

227.    Dr. Schruers suffered adverse employment actions when Edinboro failed to hire him for those positions.

228.    Individuals outside of Dr. Schruers' protected class were treated more favorably.

229.    Edinboro's justifications for the adverse employment actions are false and a pretext for discrimination.

230.    As a result of the adverse employment actions, Dr. Schruers has suffered economic losses and been subject to emotional distress and reputation damage.

231.    In violation of 43 Pa. Cons. Stat. § 955(e), the individual Defendants aided, abetted, incited, compelled or coerced the discriminatory adverse employment actions described above.

232.    Dr. Schruers seeks all remedies and damages available under the PHRA, including but not limited to, back pay, front pay, compensatory damages for emotional distress, reputation damage, and defamation of character, attorney's fees and costs, and prejudgment and post-judgment interest.

## COUNT VI
### Plaintiff v. All Defendants
### PHRA – Age Discrimination

233.    The foregoing paragraphs are incorporated as if set forth herein at length.

26

234.    Dr. Schruers is over 40 years of age (currently 52) and in a class protected by the ADEA.

235.    Dr. Schruers is qualified for the positions he applied to at Edinboro.

236.    Dr. Schruers suffered adverse employment actions when Edinboro failed to hire him for those positions.

237.    Individuals outside of Dr. Schruers' protected class were treated more favorably.

238.    Edinboro's justifications for the adverse employment actions are false and a pretext for discrimination.

239.    In violation of 43 Pa. Cons. Stat. § 955(e), the individual Defendants aided, abetted, incited, compelled or coerced the discriminatory adverse employment actions described above.

240.    As a result of the adverse employment actions, Dr. Schruers has suffered economic losses and been subject to emotional distress and reputation damage.

241.    Dr. Schruers seeks all equitable remedies and injunctive relief permitted by law, including, but not limited to, restoration and/or rehiring into the tenure-track position within Edinboro's Art Department and/or similar full-time position, as well as costs of litigation including reasonable attorney's fees.

### COUNT VII
### Plaintiff v. All Defendants
### PHRA – Retaliation

242.    The foregoing paragraphs are incorporated as if set forth herein at length.

243.    Dr. Schruers engaged in conduct protected by the PHRA.

244.    For example, Dr. Schruers dual filed charge of discrimination with the EEOC and the PHRC asserting sex and age discrimination and retaliation on September 25, 2013 and April 22,

27

2015, and litigated those charges up until he received the right-to-sue letters in April 2018.

245.    Following the protected conduct, Dr. Schruers was retaliated against by Edinboro.

246.    As described above, Dr. Schruers was denied a position.

247.    Based on the timing of the protected conduct, the individuals involved, and the pretextual nature of Edinboro's justification for the failure to hire, a causal connection exists between Dr. Schruers' protected conduct and the adverse employment actions.

248.    As a result of the adverse employment actions, Dr. Schruers has suffered economic losses and been subject to emotional distress and reputation damage.

249.    In violation of 43 Pa. Cons. Stat. § 955(e), the individual Defendants aided, abetted, incited, compelled or coerced the retaliatory adverse employment actions described above.

250.    Dr. Schruers seeks all remedies and damages available under the PHRA, including but not limited to, back pay, reinstatement, front pay, compensatory damages for emotional distress, reputation damage, and defamation of character, punitive damages, attorney's fees and costs, and prejudgment and post-judgment interest.

<div style="margin-left:40%;">

Respectfully Submitted,

LIEBER HAMMER HUBER & PAUL, P.C.

_James B. Lieber_
James B. Lieber
Pa. I.D. No. 21748
Thomas M. Huber
Pa. I.D. No. 83053
Jacob M. Simon
Pa. I.D. No. 202610
5528 Walnut Street
Pittsburgh, PA 15232-2312
(412) 687-2231 (telephone)
(412) 687-3140 (fax)

</div>

## VERIFICATION

I verify that the facts set forth in this complaint are true and correct to the best of my knowledge, information, and belief.  I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities.


Date:   June _18_, 2018

_Eric J Schruers_

Eric Schruers

**LIEBER HAMMER HUBER**
**& PAUL, P.C.**
ATTORNEYS AT LAW
5528 Walnut Street
Pittsburgh, PA 15232

**RECEIVED**

JUN 27 2018

EDINBORO UNIVERSITY
HUMAN RESOURCES & FACULTY RELATIONS

Edinboro Univ. of PA
219 Meadville Street
Edinboro, PA 16444





First Class Mail

7015 3430 0000 8533 9360

UNITED STATES POSTAGE
02 1P
0000899101
MAILED FROM ZIP CODE 15232
$008.460
JUN 22 2018
PITNEY BOWES

**LIEBER HAMMER HUBER**
**& PAUL, P.C.**
ATTORNEYS AT LAW
5528 Walnut Street
Pittsburgh, PA 15232

Jacob M. Simon, Esq
Lieber Hammer Huber & Paul, P.C.
5528 Walnut Street, Second floor
Pittsburgh, PA 15232

